**Curt SPALLONE, et al., Plaintiffs,**

v.

**VILLAGE OF ROSELLE, et al., Defendants.**

No. 83 C 4809.

United States District Court, N.D. Illinois, E.D.

April 11, 1984.

Thomas J. Brice, Chicago, Ill., for plaintiffs.

Henry E. Mueller, Ancel, Glink, Diamond, Murphy & Cope, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In July 1983 Curt Spallone ("Spallone")[1] filed this civil rights action against the Village of Roselle ("Roselle") and several

---

**1.** On January 18, 1984 this Court dismissed Spallone's parents as plaintiffs because their interest in Spallone's liberty is not of constitutional stature.

of its policemen under 42 U.S.C. § 1983 ("Section 1983") and other sections of the Civil Rights Act, 42 U.S.C. §§ 1981–1996. Then on September 9 Spallone was convicted in state court on charges arising from the arrest incident alleged in the Complaint. Accordingly defendants have moved for dismissal under Fed.R.Civ.P. ("Rule") 12(b)(6):

1. Initially defendants urged the collateral estoppel effect of Spallone's state court conviction barred his entire action under *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

2. In reply defendants have also argued any causes of action not barred by the state court conviction are merely common law torts that should no longer be constitutionally cognizable under the analysis of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Though Spallone admits the first contention is well taken against his false arrest claim, none of the Complaint's four counts rests solely on false arrest. Thus collateral estoppel does not warrant dismissal of any count. As for the second assertion, *Parratt* has not been extended, nor should it be, to allegations such as those of the Complaint.

### Facts [2]

All four counts of the Complaint arise out of Spallone's October 24, 1982 arrest and alleged beating by police officers Dennis Medema ("Medema") and Michael Krueger ("Krueger"):

1. Count One alleges Medema and Krueger arrested and beat Spallone without cause, then fabricated a story to justify both the arrest and the beating.

2. Count Two alleges all defendants conspired to arrest and beat Spallone without cause, then to cover up their wrongdoing.

3. Count Three alleges Roselle Chief of Police Dayle Lites ("Lites") and Roselle itself are responsible for "policies, practices, and customs" (¶ 21) that proximately caused the wrongdoings alleged in Counts One and Two.

4. Count Four alleges Lites and Roselle breached duties to Spallone to take adequate steps to prevent the wrongdoings alleged in Counts One and Two.

Spallone faced trial on four criminal charges after his arrest: (1) illegal possession or transportation of alcohol, (2) driving while intoxicated, (3) resisting arrest and (4) battery of a police officer. On September 9, 1983 he was convicted of the first two counts but acquitted of the last two. Spallone says he raised no constitutional defenses at his state trial.[3]

### Res Judicata Principles

"Res judicata" (in a broad sense) comprises claim preclusion, which prohibits litigants from splitting a single cause of action into more than one civil proceeding, and issue preclusion or collateral estoppel, which prohibits litigants from relitigating issues actually resolved in an earlier proceeding.[4] It is beyond dispute that federal civil rights suits are subject to both issue preclusion (*Allen*) and claim preclusion (*Migra*) stemming from prior state court litigation.

---

**2.** All well-pleaded allegations in the Complaint are assumed true for purposes of the current motion and are viewed "in the light most favorable to the nonmoving party." *Wolfolk v. Rivera,* 729 F.2d 1114 at 1116 (7th Cir.1984). Meanwhile the facts of record as to Spallone's conviction may be considered on a motion to dismiss. *Newcomb v. Brennan,* 558 F.2d 825, 829 (7th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977).

**3.** That assertion is supported by neither the pleadings nor public documents to which the parties have called this Court's attention, but on a motion to dismiss the nonmoving party is

entitled to stake out such ground as his own, and if necessary the truth of the statement may be evaluated at a later date. See *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Because Spallone will be redrafting the Complaint in any case, he is expected to add an allegation to the effect of his current assertion.

**4.** *Migra v. Warren City School Dist.,* — U.S. ——, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) explains that res judicata terminology. As *Migra* accurately reflects, the term "res judicata" is more frequently used synonymously with claim preclusion alone.

■ Because defendants assert the preclusive effect of Spallone's criminal trial, Spallone's inability to have raised civil claims at that trial [5] forecloses any application of claim preclusion principles. Accordingly defendants rely only on issue preclusion, not claim preclusion.

■ This Court must accord to Spallone's criminal trial the same issue-preclusive effect it would receive in state court. *Migra*, 104 S.Ct. at 898; 28 U.S.C. § 1738. *Redfern v. Sullivan*, 111 Ill.App.3d 372, 375, 67 Ill.Dec. 166, 169, 444 N.E.2d 205, 208 (4th Dist.1982 & 1983) (citations omitted, italics in original) provides a recent statement of Illinois' law of issue preclusion:

> Where estoppel by verdict (or *collateral estoppel*) is applied, the parties are precluded from relitigating an issue in a subsequent proceeding where that issue was actually or necessarily decided by a court of competent jurisdiction in an earlier proceeding involving the same parties and a different cause of action.

*Redfern, id.* at 377, 67 Ill.Dec. at 170, 444 N.E.2d at 209 (citations omitted) warns "if any uncertainty exists, the doctrine will not be applied."

■ That poses the question whether any vital element of Spallone's claims of false arrest "was actually or necessarily decided" in his criminal proceedings.[6] Certainly his convictions do not preclude any elements of his claim of excessive use of force in effecting his arrest. Not even a conviction for resisting arrest *necessarily* establishes that excessive force was not used in the underlying arrest. See *Clark v. State of Illinois*, 415 F.Supp. 149, 154–56 (N.D.Ill.1976). And as this is a motion to dismiss, defendants have not shown as a factual matter that any issues of excessiveness of the force used to arrest Spallone were actually litigated. Moreover Spallone's claims of coverup, conspiracy and inadequate institutional safeguards derive from his false arrest and excessive use of force claims and are not precluded on any independent basis by the criminal adjudication.

■ On the other hand, whether Spallone's false arrest claim is precluded can be resolved with the aid of admissions at Spallone's R.Mem. 2. There he acknowledges a state judge found his arrest was supported by probable cause before he had to stand trial on the criminal charges against him. As our Court of Appeals pointed out in *Whitley v. Seibel*, 676 F.2d 245, 248 (7th Cir.), *cert. denied*, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982), if a finding of probable cause to arrest is given preclusive effect, it necessarily prevents the assertion of any Section 1983 claim based on false arrest.

Moreover the reasons for not affording such preclusive effect in *Whitley*, 676 F.2d at 248–50 are not present here. There probable cause was found (*id.* at 249) in "a relatively summary proceeding" at which plaintiff "did not attack the veracity of the state's case against him." In reality (*id.* at 246) plaintiff there "had a complete alibi defense" and the state ultimately dropped its charges against him. Here by contrast Spallone had no valid defense, as the criminal trial later established.[7]

---

5. Claim preclusion applies to theories that were or could have been raised in the prior proceeding. *Nevada v. United States,* — U.S. ——, 103 S.Ct. 2906, 2918–19 & n. 12, 77 L.Ed.2d 509 (1983). Spallone could not have raised any claim for damages in the criminal proceeding.

6. *Redfern*'s privity requirement is a non-issue. As *Redfern* itself notes (*id.* 111 Ill.App.3d at 375–76, 67 Ill.Dec. at 169, 444 N.E.2d at 208), Illinois' privity requirement extends only to a party *against* whom collateral estoppel is asserted. *Illinois State Chamber of Commerce v. Pollution Control Bd.,* 78 Ill.2d 1, 7, 34 Ill.Dec. 334, 336–337, 398 N.E.2d 9, 11–12 (1979). Here collateral estoppel is asserted against Spallone, a party to both lawsuits.

7. Contrary to defendants' contention, the fact of Spallone's conviction alone does not warrant dismissal of his false arrest claim under Rule 12(b)(6). In *Palma v. Powers,* 295 F.Supp. 924, 941–42 (N.D.Ill.1969) Judge Will of this District Court dismissed a false arrest claim under Rule 56 in light of plaintiff's conviction, but as he later pointed out in *Clark,* 415 F.Supp. at 154–56 a subsequent criminal conviction is not necessarily inconsistent with an original arrest unsupported by probable cause.

In some abstract sense it is conceivable Spallone might have had a valid argument there was no probable cause to arrest him, did not raise it because of the summary nature of the preliminary hearing, and was ultimately convicted on subsequently-discovered evidence. That attenuated hypothesis is not sufficient even to withstand a motion to dismiss for two reasons:

1. Spallone was convicted of two crimes, one of which was driving while intoxicated. Intoxication is of course a temporal condition. Especially in the absence of any argument by Spallone along these lines, it would be bizarre indeed to speculate that Spallone was convicted as a result of later-discovered evidence even while Medema and Krueger had no probable cause to believe Spallone was driving and intoxicated at the time of the arrest.

2. Spallone's R.Mem. 1 now disavows that false arrest is the major thrust of his Complaint, and states (*id.* at 2):

> The fact that Plaintiff was convicted of two of the four state charges (and thus admittedly there was a finding of probable cause) should not obliterate nor disturb the fact that the actions of the arresting officers violated the Constitutional rights of the Plaintiff....

If Spallone might have had an argument based on the unlikely chain of events hypothesized above, that position is now waived.

In short the mere fact of Spallone's convictions does not in any way damage his claims of (1) excessive use of force or (2) conspiracy, coverup and negligence in connection with that use of force. It does however warrant striking Spallone's claims of (1) false arrest and (2) conspiracy, coverup and negligence in connection with that arrest (if indeed he ever intended those claims to be a basis for recovery).

### Extension of Parratt

By the time of their reply memorandum defendants plainly realized their collateral estoppel motion could not prevail against the entire Complaint. Accordingly their R.Mem. 5 argues *Parratt* establishes Spallone's "broad claim of a violation of his Fourteenth Amendment rights through false arrest, false imprisonment and simple battery. is precluded by the availability to plaintiff of ·tort remedies under Illinois law...."

All that remains of Spallone's Complaint are (1) his claim of excessive use of force by Medema and Krueger and (2) his claims against other defendants that they intentionally or negligently (through a conspiracy, promulgation of policies and customs and breach of duties to Spallone) caused that excessive use of force. Today this Court, following *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), has held in *Anton v. Lehpamer*, 584 F.Supp. 1387, No. 81 C 36 (N.D.Ill. Apr. 11, 1984) that *Parratt* does not rewrite the history of Section 1983 so extensively that it no longer covers what has been recognized as within its core meaning: allegations of excessive use of force in making an arrest. On the reasoning of *Anton*, Count I states a claim for relief against Medema and Krueger for excessive use of force.

More discussion is required as to the remaining allegations of Counts Two (conspiracy), Three (custom or policy) and Four (breach of duty), for they rest on both intentional tort and negligence theories. Because *Parratt* dealt with negligent deprivation of property, its resemblance to those counts is perhaps greater than to the excessive use of force claim, which must rest on defendant's bad faith and not on mere negligence. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979); *Whitley*, 676 F.2d at 248. . However that resemblance vanishes when it is recalled, as even *Parratt* reiterates (451 U.S. at 534, 101 S.Ct. at 1912), Section 1983 has no state-of-mind requirement. As always the question is and should be whether the plaintiff has described constitutional violations.

Once it is determined Count One states a claim, it flows logically without reference to *Parratt* that Counts Two through Four do the same. Count One's alleged injury, harm due to intentional ex-

cessive use of force in effecting an arrest, is of constitutional stature. Counts Two through Four accuse each defendant of proximately causing that constitutional injury. Under this Court's recently-stated analysis in *Padilla v. d'Avis,* 580 F.Supp. 403 (N.D.Ill.1984), an allegation of an intentional constitutional deprivation by another, coupled with an allegation the defendant proximately caused that intentional act, suffices for Rule 12(b)(6) purposes.[8]

■ There is no force to the argument *Parratt* swept away all Section 1983 liability for negligent constitutional deprivations, just as *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977) swept away all vicarious liability for constitutional deprivations. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) laid any such contention to rest when Justice Blackmun, writing for six Justices, held Section 1983 liability arises when "the state system itself" causes a constitutional deprivation "through negligence, maliciousness, or otherwise."[9]

Moreover as this Court's review of authorities in *Eklund v. Hardiman,* 580 F.Supp. 410, 412–414 (N.D.Ill.1984) indicates, our Court of Appeals has explained the contours of liability for intentional constitutional torts of others without a hint that *Parratt* abolished Section 1983 liability for negligence.[10]

Of course *Parratt* may not be put aside lightly.[11] Although its *holding* was not very controversial (only Justice Marshall disagreed with the result, and even he agreed "with much of the majority's reasoning" (451 U.S. at 556, 101 S.Ct. at 1923)), it contains language (if not analysis) that could change the entire complexion of due process law.[12]

We are not enlightened much by such cases as *Brewer v. Blackwell,* 692 F.2d 387 (5th Cir.1982), which deal with *Parratt* in a straightforward manner but then create confusion by finding simply (*id.* at 395) "*Parratt* does not, therefore, bar relief," and then returning to traditional due process analysis without another word about *Parratt.*[13] In contrast to that treatment it

8. As in *Padilla,* at 406 n. 5, the fact such allegations might be difficult to prove does not warrant dismissal.

9. Justice Blackmun contrasted deprivations caused by "the state system itself" (455 U.S. at 436, 102 S.Ct. at 1158) with deprivations caused by "a random and unauthorized act" (*id.* at 435, 102 S.Ct. at 1157, quoting *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916). If that is indeed the basis on which *Logan* must be distinguished from *Parratt, Logan* applies to Counts Two through Four. Count Two (conspiracy) alleges intentional, not random, acts. Counts Three and Four (custom and breach of duty) allege authorized, not unauthorized, acts.

10. *Eklund* discussed *Lojuk v. Quandt,* 706 F.2d 1456 (7th Cir.1983); *Lenard v. Argento,* 699 F.2d 874 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); and *Crowder v. Lash,* 687 F.2d 996 (7th Cir.1982). Nor can it be argued those cases followed *Parratt* by abolishing causes of action sounding in negligence while preserving claims resting on defendant's *gross* negligence. Not only did *Eklund,* at 412–413 interpret the cases differently, but our Court of Appeals in *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1144 n. 1 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983) expressly disavowed any intention to employ a negligent-reckless distinction in interpreting *Parratt.*

11. As might have been expected, *Parratt* has stimulated at least as much scholarly debate in the law reviews as in judicial opinions. See, *e.g.,* Friedman, *Parratt v. Taylor: Opening and Closing the Door on Section 1983,* 9 Hastings Const.L.Q. 545 (1982); Smolla, *Displacement of Federal Due Process Claims by State Tort Remedies: Parratt v. Taylor and Logan v. Zimmerman Brush Company,* 1982 U.Ill.L.Rev. 831; Comment, *Due Process and Section 1983: Limiting Parratt v. Taylor to Negligent Conduct,* 71 Calif. L.Rev. 253 (1983).

12. Prof. Friedman, 9 Hastings Const.L.Q. at 577–78 warns:

It would be a constitutional scandal of the highest order if the *Parratt* case were used to turn the clock back, not before 1961 when *Monroe* was decided, but before 1871 when section 1983 was passed.

Yet (without advocating such a result) Comment, 71 Calif.L.Rev. at 279 suggests *Parratt* may be read to "posit[ ] that post-deprivation process is constitutionally satisfactory where predeprivation process is 'impracticable.' Such an argument leaves no principled ground for limiting *Parratt* to its facts."

13. After the quoted language *Brewer* said (*id.*): We refrain from attempting otherwise to define the situations to which its doctrine applies.

may be appropriate to suggest briefly how *Parratt* would really affect this case.[14]

There are essentially three ways in which a court, confronting *Parratt* in the context of a case such as this one, may respond:

1. It may follow the *Brewer* path, ignoring the full logical implications of Justice Rehnquist's discussion.[15] With all respect, that seems too much of an ostrich reaction to a major problem in the law of civil rights.

2. It may make the statement found in *Anton* and adhered to earlier in this opinion, recognizing those logical implications but rejecting their result absent definitive resolution by the Supreme Court or Congress. To this Court such a response, throwing down a respectful gauntlet, places the responsibility for such a dramatic change in law precisely where it belongs.

3. It may parse Justice Rehnquist's opinion to explain why it does not *really* negate Section 1983 coverage in the current case. *See, e.g.,* the scholarly and extended treatment by this Court's colleague Judge Marshall in *Begg v. Moffitt,* 555 F.Supp. 1344, 1353–65 (N.D.Ill.1983). What this Court finds troublesome in that procedure is that it tends to disappear into the same kind of semantic bog that generated the problem in the first place.

It should be clear this Court views the second alternative—the frontal posing of the problem—far preferable in principle, though not nearly so satisfying in terms of logical development. Despite that it will enter the third thicket, if only to show even Justice Rehnquist's approach (as it must be read to speak for a majority of the Court) does not alter the outcome.

Until *Parratt* it was black-letter law that procedural due process applies to cases in which a court must evaluate the adequacy of government procedures for divesting citizens of benefits conferred by law. Substantive due process concerned what the government could and could not do in a given situation regardless of the procedures it employs. It is a familiar law school Socratic game, however, to discover the substance-procedure distinction tends to evaporate upon close examination. Substantive rights necessarily depend on the procedural profile in which an objection to the deprivation of those rights is raised.

In *Parratt* Justice Rehnquist took a simple substantive due process case, in which eight Justices agreed there was no violation, and applied procedural due process analysis.[16] He swept through the preliminary requirements of due process claims and focused on the procedural aspects of the plaintiff's rights (451 U.S. at 536–37, 101 S.Ct. at 1913–14, footnote omitted):

> Unquestionably, respondent's claim satisfies three prerequisites of a valid due process claim: the petitioners acted under color of state law; the hobby kit falls within the definition of property; and the alleged loss, even though negligently caused, amounted to a deprivation.... Our inquiry therefore must focus on whether the respondent has suffered a deprivation of property without due process of law.

That approach was defensible, even logical, given the necessary interaction between substantive and procedural rights.

But as Justice Blackmun (joined by Justice White) pointed out in his concurring opinion, a consequence of Justice Rehnquist's preference for procedural analysis is that more governmental activities must be considered procedural in nature. Hypothesizing that a case like this one was

---

**14.** Technically what follows (though it is a real-case analysis) is dictum, for that is the consequence whenever a court announces alternative routes to a decision. Nonetheless this Court pursues the analysis for the reason stated in the next paragraph of the text.

**15.** This Court does distinguish between *Parratt* as a decision and Justice Rehnquist's opinion announcing it. Even though there was just one dissenting vote, only four Justices adhered without reservation to Justice Rehnquist's opinion.

**16.** "Analysis" is used loosely, for Justice Rehnquist did not engage in the three-step balancing process mandated by *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

before him, he said (451 U.S. at 546, 101 S.Ct. at 1918, citations omitted):

> When it is possible for a State to institute procedures to contain and direct the intentional actions of its officials, it should be required, as a matter of due process, to do so.

"Procedures" in that context are not the same concept we normally consider when we speak of "procedural" due process. If that kind of redefinition is necessary to muster a majority of the Court's Members,[17] what is at work in the context of the present case is substantive due process in the garb of procedure. Whether that represents new wine in old bottles or old wine in new, it is a change in vocabulary and not substance.

■■■ This Court's holding can be restated in that vocabulary:

1. Counts One and Two allege intentional deprivation of Spallone's right to bodily security. He has alleged color of state law, a liberty interest and a deprivation of that interest. Illinois' tort remedy is not sufficient, because the deprivation described is not constitutionally permissible regardless of the procedures employed either before or after the deprivation.

2. Counts Three and Four allege that negligent or intentional conduct by Lites and Roselle proximately caused the intentional deprivation of Spallone's right to bodily security. Color of state law, interest and deprivation are the same as for Counts One and Two. Counts Three and Four—if proved—would establish Lites and Roselle provided Spallone inadequate procedural safeguards before such deprivation.[18]

#### Conclusion

To the extent the Complaint may be construed to contain allegations of false arrest and false imprisonment, those allegations must be stricken as precluded by the collateral estoppel effect of Spallone's conviction. In all other respects defendants' motion is denied. Because it would be more orderly to recast the Complaint to deal only with what now survives, Spallone is granted leave to file an amended complaint by April 13, 1984 and defendants must answer by April 25.

---

**17.** As this Court indicated soon after *Parratt,* precisely what any *Parratt* majority held varies depending on the context. *Eberle v. Baumfalk,* 524 F.Supp. 515, 518 n. 4 (N.D.Ill.1981). For claims like those in this case, the Blackmun-White votes are necessary to a Rehnquist-led majority. Indeed *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158 cited Justice Blackmun's *Parratt* concurrence to distinguish the claim involved in *Parratt* from that in *Logan* (and by analogy the claims here are far closer to the *Logan* claim).

**18.** *Lojuk, Lenard, Crowder, Eklund* and *Padilla* provide support for that proposition. After all, a change in language does not alter the applicability of holdings to their respective facts.