**Robert HANSON, Plaintiff,**

v.

**Terry LARKIN and Chief of Police, Anthony Bouza, Chief of Police, and others unknown to plaintiff, Defendants.**

**No. 3–83 Civ. 1340.**

United States District Court,
D. Minnesota,
Third Division.

March 22, 1985.

Theodore D. Dreyer, Eden Prairie, Minn., for plaintiff.

Robert J. Alton, City Atty., by David M. Gross, Asst. City Atty., Minneapolis, Minn., for defendant Terry Larkin.

Robert J. Alton, City Attorney, by William C. Dunning, Asst. City Atty., Minneapolis, Minn., for defendant Anthony Bouza.

ALSOP, District Judge.

The above-entitled matter came on for hearing before the undersigned on the 14th day of December, 1984, upon the motion of defendant Terry Larkin to dismiss this case for failure to state a claim upon which relief can be granted pursuant to Fed.R. Civ.P. 12(b)(6) and upon the motion of defendant Anthony Bouza for summary judgment pursuant to Fed.R.Civ.P. 56. Since matters outside of the pleadings have been presented to and accepted by the court, both motions shall be considered as motions for summary judgment.

The incident out of which this case arises took place shortly after midnight on August 30, 1982. Defendant Larkin is a Minneapolis police officer. On the night in question, he and plaintiff Robert Hanson were driving in close proximity of each other on the freeway system between the Minnesota State Fair Grounds and South Minneapolis. Officer Larkin was not on duty at the time, but was in full uniform because he had been working as a security guard at the beer garden at the Minnesota State Fair. Apparently, Officer Larkin was driving behind Hanson and he flashed the high beams of his headlights into Hanson's car. After Officer Larkin passed Hanson, Hanson flashed the high beams of his headlights into Larkin's vehicle. It also appears that Officer Larkin shined his flashlight into Hanson's car and that passengers in Hanson's car yelled and gestured at Officer Larkin. Both Hanson and Officer Larkin exited Interstate 35W at 46th Street and stopped at the intersection of 46th Street and Stevens Avenue in Minneapolis. Hanson and a passenger got out of Hanson's car and met Officer Larkin at the rear of the vehicle. There, a scuffle ensued. Officer Larkin struck Hanson in the forehead with his flashlight and sprayed mace upon the passenger. The blow to Hanson's forehead caused a cut requiring four stitches. Hanson was arrested after the incident, apparently by Officer Larkin.

Plaintiff Robert Hanson brings this action pursuant to 42 U.S.C. § 1983 for deprivation of his civil rights arising out of the alleged battery and false arrest suffered by him at the hand of Officer Larkin. Chief of Police Anthony Bouza is being sued in his official capacity as Chief of Police for the City of Minneapolis for failure to adequately train and supervise Officer Larkin.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

There are two essential elements to any § 1983 cause of action: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

The United States Supreme Court has broadly defined when a person is acting "under color of state law." The Court has stated:

... misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.

*United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed.2d 1368 (1941). Although this definition came in the criminal

context, it has been adopted by the Supreme Court for § 1983 actions. *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Under this definition it is clear that if a wrongdoer is clothed in the authority of state law, his or her acts are within the meaning of "under color of state law" even if those acts violate state law. *See Parratt v. Taylor*, 451 U.S. at 535–36, 101 S.Ct. at 1912–13; *Barnier v. Szentmiklosi*, 565 F.Supp. 869, 873 (E.D.Mich. 1983). It is also clear that the acts of Officer Larkin complained of by Hanson were done "under color of state law." Officer Larkin, at the time of the alleged conduct, was literally clothed in the authority of state law in his police uniform. The State of Minnesota and our society in general recognize the authority of a uniformed police officer to detain and arrest an individual. *See* Minn.Stat. § 629.34 (1984). Therefore, the court's inquiry must turn to the second element—whether Hanson has been deprived of any right, privilege or immunity secured by the Constitution or laws of the United States.

▪ Viewed in the light most favorable to plaintiff Hanson, his complaint alleges a deprivation of a liberty interest without due process of law in violation of the fourteenth amendment to the United States Constitution. The fourteenth amendment provides in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States, *nor shall any State deprive any person of life, liberty, or property without due process of law;* nor deny to any person within its jurisdiction the equal protection of the law.

(Emphasis added.) There are three prerequisites of a valid procedural due process claim: (1) the wrongdoer must act under color of law; (2) the wrong must affect the life, liberty or property of an individual; and (3) the wrong must result in an actual deprivation of that individual's life, liberty or property. *Parratt v. Taylor*, 451 U.S. at 536–37, 101 S.Ct. at 1913–14. The court has already concluded that Officer Larkin

was acting under color of state law on the evening in question. Further, the right to be free from battery and false arrest by the State are protected liberty interests. Finally, accepting for purposes of this order plaintiff's version of the facts, it is clear that he suffered an actual deprivation of his liberty interests. Therefore, Hanson has met the prerequisites of a valid due process claim.

These three elements alone, however, do not establish a procedural due process claim under the fourteenth amendment. The Supreme Court in *Parratt v. Taylor* noted that "(N)othing in that Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations 'without due process of law.'" *Parratt v. Taylor*, 451 U.S. at 537, 101 S.Ct. at 1914 (citing *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed. 433 (1979)). The *Parratt* Court held that when a state provides an adequate remedy in tort for a negligent deprivation of property, that remedy itself constitutes the due process required by the fourteenth amendment, even though the remedy is not provided until after the deprivation has occurred. *Id.* at 543–44, 101 S.Ct. at 1916–1917. The scope and application of the *Parratt* holding has perplexed federal district and circuit courts. While the Supreme Court has provided some guidance, *Hudson v. Palmer*, ── U.S. ──, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), it has not as of yet clearly defined the parameters of *Parratt*. *See Jackson v. City of Joliet*, ── U.S. ──, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984) (White, J., dissenting from the denial of certiorari). The precise issue before this court is whether the tort remedies provided by the State of Minnesota to redress an intentional violation of a liberty interest satisfy the procedural due process requirements of the fourteenth amendment. To answer this question, the court must review the rationale behind *Parratt* and its progeny.

In *Parratt* a state prison inmate sued prison officials for damages under § 1983, alleging that their negligent loss of a hob-

by kit he had ordered from a mail-order catalogue deprived him of property without due process. The Court found that there had been a deprivation of property under color of law and was then squarely faced with the issue of whether the deprivation had occurred without due process of law. The Court first noted that in many of its cases it had held that due process requires a predeprivation hearing. In those cases the deprivation of the individual's property was generally pursuant to an established state procedure easily offered before the deprivation took place. *Parratt v. Taylor,* 451 U.S. at 537, 101 S.Ct. at 1914. The Court then recognized that in some instances a state postdeprivation remedy can satisfy due process. *Id.* at 538–39, 101 S.Ct. at 1914–1915. After reviewing several cases, the Court stated:

> (T)hese cases recognize that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.

*Id.* at 539, 101 S.Ct. at 1915. The Court concluded that the fundamental requirement of due process is that an individual must be granted an opportunity to be heard at a meaningful time and in a meaningful manner, but that opportunity need not always be granted prior to the initial deprivation of property. *Id.* at 540, 101 S.Ct. at 1915. The Court reasoned that a postdeprivation hearing is sufficient when it is impracticable for the state to provide a predeprivation hearing and when the state provides a full and meaningful hearing at some time afterwards. *Id.* at 540–41, 101 S.Ct. at 1915–1916. Applying these principles to the facts before it, the *Parratt* court noted that the deprivation was the result of an unauthorized and random act of a state employee, that a predeprivation hearing was impossible, and that the state provided an adequate postdeprivation remedy in tort. *Id.* at 543–44, 101 S.Ct. at 1916–17. The Court therefore concluded

that there had not been a deprivation of property without due process of law under the fourteenth amendment. *Id.* at 543, 101 S.Ct. at 1917.

■ The first clarification of *Parratt* came in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In *Logan,* the Illinois Fair Employment Practices Commission inadvertently scheduled a conference on plaintiff's unlawful discharge complaint five days after the expiration of the statutory limitation period. *Id.* at 426, 102 S.Ct. at 1152. Plaintiff therefore was deprived of his claim by operation of law. The Supreme Court noted that *Parratt* applies only when a state must act quickly or when it is impossible for a state to provide meaningful predeprivation process. *Id.* at 436, 102 S.Ct. at 1158. The Court distinguished *Logan* from *Parratt* and stated:

> In *Parratt,* the Court emphasized that it was dealing with "a tortious loss of … property as a result of a random and unauthorized act by a state employee … not a result of some established state procedure." 451 U.S. at 541 [101 S.Ct. at 1916]. Here, in contrast, it is the state system itself that destroys a Complainant's property interest, by operation of law, whenever the commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation.

*Id.* at 435–36, 102 S.Ct. at 1158. After *Logan,* it is clear that postdeprivation process will not satisfy due process when the deprivation is effectuated through an established state procedure.

The Supreme Court extended the reach of *Parratt* in *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Hudson,* the plaintiff alleged that a state official intentionally destroyed his personal property during a search of his prison cell. *Id.* at ——, 104 S.Ct. at 3197. The Court, after summarizing its rationale in *Parratt,* held that an unauthorized intentional deprivation of property by a state

official does not constitute a due process violation under the fourteenth amendment when the state provides a meaningful post-deprivation remedy. *Id.* at ——, 104 S.Ct. at 3204. The Court stated:

> ... when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the "practicability" of affording predeprivation process is concerned. The State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.

*Id.* at ——, 104 S.Ct. at 3203.

The United States Supreme Court has not indicated whether *Parratt* analysis is applicable to a case involving an intentional deprivation of a liberty interest. However, some guidance can be found in a pre-*Parratt* case, *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In *Ingraham*, several students brought suit alleging, *inter alia*, deprivations of their liberty interests without due process because school authorities inflicted excessive corporal punishment. *Id.* at 653–57, 97 S.Ct. at 1403–1405. The Court found that corporal punishment in public schools does implicate protected liberty interests under the fourteenth amendment, but held that state common law remedies afforded adequate due process. *Id.* at 672, 97 S.Ct. at 1413. As in *Parratt*, the common law remedies were postdeprivation remedies. The *Ingraham* Court recognized, however, that a postdeprivation remedy may provide adequate due process when predeprivation process would be too intrusive. *Id.* at 682, 97 S.Ct. at 1418.

The Eighth Circuit Court of Appeals has not yet decided whether *Parratt* analysis is applicable to a case involving an intentional deprivation of a liberty interest without due process of law. Two circuit courts have recently held that *Parratt* does apply to deprivations of liberty interests without due process. In *Gilmere v. City of Atlanta, Ga.,* the Eleventh Circuit Court of Appeals held that an arrestee shot and killed by police during arrest was not deprived of liberty without due process where state law provided postdeprivation remedies in tort and it would have been both impractical and impossible to provide a meaningful predeprivation hearing. *Gilmere v. City of Atlanta, Ga.,* 737 F.2d 894, 909–10 (11th Cir.1983). In *Thibodeaux v. Bordelon,* the plaintiff, a pretrial detainee in a Louisiana jail, brought a § 1983 action against a co-detainee and several government officials for injuries he received when a co-detainee set fire to the jail. *Thibodeaux v. Bordelon,* 740 F.2d 329, 331–32 (5th Cir.1984). In holding that *Parratt* analysis applies to negligent deprivations of liberty interests, the Fifth Circuit stated:

> In this case, as in *Parratt,* "there is no contention that the procedures themselves are inadequate." The defendants' alleged negligence was "random and unauthorized" action of the same sort involved in *Parratt.* In such circumstances, the State cannot reasonably be expected to do more than provide adequate postdeprivation remedies. If such remedies are available, a plaintiff deprived of liberty or property is not denied procedural due process.

*Id.* at 337.

 This court concludes that when a state provides an adequate, postdeprivation remedy in tort for an unauthorized, intentional deprivation of a liberty interest, that remedy itself constitutes the due process required by the fourteenth amendment. This court's review of the cases leaves it with the distinct impression that the controlling question is whether the state can provide a meaningful predeprivation hearing. *Parratt v. Taylor,* 451 U.S. at 541, 101 S.Ct. at 1916 *Hudson v. Palmer,* —— U.S. at ——, 104 S.Ct. at 3203. When a state can provide a meaningful predeprivation hearing, due process requires that it do so. However, when a deprivation re-

sults from a "random and unauthorized act" by a state official, the state is simply unable to provide a meaningful predeprivation hearing and due process can only be satisfied through a meaningful postdeprivation hearing. This is the case whether deprivation involves a property or a liberty interest. There simply is not any meaningful distinction between the two. *Thibodeaux v. Bordelon,* 740 F.2d 329, 336–37 (5th Cir.1984). Further, it seems clear after *Hudson v. Palmer* that there can be no distinction drawn between negligent and intentional torts. *Hudson v. Palmer,* —— U.S. at ——, 104 S.Ct. at 3203. In *Hudson,* the Supreme Court reasoned:

> The State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct. Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signaling his intent.

*Id.*

While the Supreme Court has not yet dealt with *Parratt* analysis in a liberty interest context, the logic of its opinions supports the expansion of *Parratt.* In *Ingraham v. Wright,* a pre-*Parratt* case, the Court used a *Parratt* analysis in dealing with the liberty interests of students implicated by corporal punishment. *Ingraham v. Wright,* 430 U.S. at 672, 97 S.Ct. at 1413. The *Parratt* court noted that its analysis was quite consistent with *Ingraham. Parratt v. Taylor,* 451 U.S. at 542, 101 S.Ct. at 1916. The implication of these two cases is that the Court intends its analysis to apply to both property and liberty interests. It must be noted that Justice Blackmun in his concurring opinion in *Parratt* stated that he did not believe that *Parratt* analysis would extend to cases involving life or liberty interests. *Id.* at 545, 101 S.Ct. at 1918 (Blackmun, J. concurring). However, Justice Blackmun did not provide any rationale for his limitation and the Court has already expanded the reach of *Parratt* to intentional deprivations of property. *See Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194.

Because this court holds that the analysis of *Parratt* and *Hudson* applies to intentional deprivations of liberty interests, it must now determine whether the postdeprivation tort remedies of the State of Minnesota available to Hanson satisfy due process. The court shall discuss each defendant separately.

 With regards to the conduct of Officer Larkin, it is clear that Minnesota could not provide adequate, predeprivation due process. It is also clear that Minnesota law provides Hanson with an adequate postdeprivation remedy. The use of excessive force by a police officer constitutes a battery in Minnesota. *See Paradise v. City of Minneapolis,* 297 N.W.2d 152 (Minn.1980). Further, the State of Minnesota recognizes a cause of action against police officers for false arrest. *See Lundeen v. Renteria,* 224 N.W.2d 132 (Minn.1974).

 Chief of Police Bouza is being sued in his official capacity and not individually. Therefore, the second defendant in this suit is actually the City of Minneapolis. *Brandon v. Holt,* —— U.S. ——, 105 S.Ct. 873, 83 L.Ed. 878 (1985). Minn.Stat. § 466.02 provides in pertinent part that "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Hanson does not claim, nor does it otherwise appear, that the remedy against the state is inadequate.

The Eighth Circuit Court of Appeals instructs that summary judgment is an appropriate remedy only if "the moving party has established his right to a judgment with such clarity as to leave no room for controversy and the non-moving party is not entitled to recover under any discernible circumstances." *Camfield Lines, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364 (8th Cir.1983) (quoting *Butler v. MFA Life Insurance Co.,* 591 F.2d 448, 451 (8th Cir.

1979)). The Eighth Circuit further instructs that this court must give the non-moving party the benefit of all reasonable inferences drawn from the facts underlying the dispute. *Trnka v. Elanco Products Co.*, 709 F.2d 1223, 1225 (8th Cir.1983). This court concludes that the defendants have met their heavy burden in this case and are entitled to summary judgment. Having concluded that *Parratt* analysis applies to this case, this court cannot conceive of any discernible circumstances under which Hanson could prevail on his § 1983 claims.

Based upon the record as it is presently constituted, the arguments of counsel, the memoranda of law that have been submitted, the foregoing discussion, and all files and records herein, the court makes the following order.

**IT IS ORDERED:**

1. That the motions of all defendants for summary judgment be and the same hereby are in all things granted.

2. That the Clerk enter judgment as follows:

**IT IS ORDERED, ADJUDGED AND DECREED** That plaintiff's Complaint is dismissed with prejudice.