Candance Lee BURANEN and Robert
Francis Buranen, Plaintiffs,

v.

Thomas HANNA, Dennis Beltrand, Gary
Therkelsen, City of St. Louis Park, and
St. Louis Park Police Department, Defendants.

No. Civ. 4–85–321.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 5, 1985.

Robert P. Christensen and Paul C. Wolf, Carlsen, Greiner & Law, Edina, Minn., for plaintiffs.

Mark J. Condon, Chadwick, Johnson & Condon, Minneapolis, Minn., for defendants Hanna, Beltrand, and Therkelsen.

David K. Wendel, Stocco & Associates, and Clifford Greene, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for defendants City of St. Louis Park and its Police Dept.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the motions of defendants Hanna, Beltrand, and Therkelsen for dismissal for failure to state a claim upon which relief can be granted,[1] and in the alternative, for summary judgment based on collateral estoppel. The Court will deny defendants' motion, but the Court will dismiss plaintiffs' second cause of action.

## FACTS

Plaintiffs in this action, Candace Lee Buranen and Robert Francis Buranen, are a wife and husband who assert that police officers unjustifiably arrested them and used excessive force in the process. The individual officers involved in this lawsuit are Thomas Hanna, Dennis Beltrand, and Gary Therkelsen.[2] Beltrand and Therkelsen are full-time St. Louis Park police officers and Hanna is a reserve officer with the St. Louis Park police department.

The events in this case surround a February 21, 1984 high school hockey game at the St. Louis Park Recreation Center. The Buranens were in attendance as spectators, while the defendants were at the game in their official capacity as police officers.

During the game, an assistant coach for the visiting Shakopee team, Jeffrey Smith, climbed up on the boards to yell at the referee about a mistake on the time clock. Defendants Beltrand and Hanna approached Smith. Apparently the two officers were unaware that Smith was an assistant coach. Plaintiffs state that the two officers physically removed Smith from the boards, put Smith in an arm bar, and proceeded to escort Smith out of the arena.[3]

---

1. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) must be made before an answer is filed. *See* Fed.R.Civ.P. 12(b). Here, defendants Hanna, Beltrand, and Therkelsen filed an answer prior to making their Rule 12(b)(6) motion. Defendants' motion, therefore, is technically untimely, but defendants should still be allowed to test the sufficiency of plaintiffs' complaint. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 593 (1969). Accordingly, the Court will treat defendants' motion as one for judgment on the pleadings under Fed.R.Civ.P. 12(c). This recharacterization does not affect the legal analysis surrounding defendants' arguments.

2. The plaintiffs also named as defendants the City of St. Louis Park and the St. Louis Park Police Department. These two defendants have not moved for dismissal or summary judgment. A reference to "defendants" will denote the three individual defendants.

3. The following narrative is based on plaintiffs' version of the facts. On a motion to dismiss, of course, the Court must accept plaintiffs' allegations as true. *E.g., Miener v. State of Missouri,* 673 F.2d 969, 972 n. 3 (8th Cir.), *cert. denied,* 459 U.S. 909 and 916, 103 S.Ct. 215, 230, 74 L.Ed.2d 171, 182 (1982); *accord National Metropolitan Bank v. United States,* 323 U.S. 454, 457, 65 S.Ct. 354, 355–56, 89 L.Ed. 383 (1945) (same standard for motion for judgment on pleadings).

Candace Buranen saw the police taking Smith out of the arena, and she followed to inform them that they were making a mistake. When she approached the officers and Smith, defendant Hanna stepped in front of her and put his arm out to stop her. Candace Buranen stopped and started to ask defendant Hanna where Smith was being taken. Although Candace Buranen repeated her question several times, Hanna did not respond. She next tried to walk around Hanna in order to speak with officer Beltrand. At this point, Hanna grabbed her, threw her against the wall, and wrestled her to the ground. Once she was on the ground, Hanna sat on her, placed a knee on her chest, placed a hand on her face, and pushed her face to the ground.

In the meantime, Robert Buranen came to see what was happening because a bystander had informed him that his wife was in trouble. When he approached the officers, he saw defendant Hanna kneeling on top of his wife and he heard his wife crying out for help. Robert Buranen shouted at Hanna to let his wife go. Robert Buranen approached his wife and Hanna, but before he could reach them, officers Beltrand and Therkelsen grabbed him. (Therkelsen had just arrived on the scene in response to a radio call from Beltrand.) Robert Buranen asked the officers what was happening, but the officers only responded by telling him to shut up. The defendants proceeded to arrest plaintiffs and take them outside to the police cars. Robert Buranen was placed in an arm bar, and when he reached the patrol car, one of the officers grabbed his hair and slammed his face on the hood.

The defendants ultimately released Smith once they determined he was an assistant hockey coach. Defendants, however, took plaintiffs to the police station where they were charged with assault and obstructing justice. Plaintiffs' trial took place in Hennepin County Municipal Court in October, 1984. Immediately prior to the trial, the court held a preliminary (Rasmussen) hearing, and one of the issues was whether probable cause existed for the charges against plaintiffs. Plaintiffs were each represented by a different attorney at the hearing. The defendant police officers were the only witnesses at the hearing; plaintiffs did not testify. The court concluded that probable cause did exist. The trial followed, and it resulted in the jury acquitting plaintiffs of all charges.

Subsequently, plaintiffs commenced the present action alleging violations of their civil rights in contravention of 42 U.S.C. §§ 1983, 1985. Plaintiffs have also asserted a number of state tort claims: assault and battery, negligent use of physical force, intentional and negligent infliction of mental distress, false arrest, false imprisonment, malicious prosecution, and negligence by the city and police department for hiring, supervising, and training the individual officers.

## DISCUSSION

### Section 1983

In order to establish a cause of action based on 42 U.S.C. § 1983, plaintiffs must show that defendants acted under color of state law and that the defendants' conduct deprived plaintiffs of a right protected by the United States Constitution or federal law. *E.g., Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). As on duty police officers, defendants were unquestionably acting under color of state law, *see Monroe v. Pape*, 365 U.S. 167, 186–87, 81 S.Ct. 473, 483–84, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Hanson v. Larkin*, 605 F.Supp. 1020, 1023 (D.Minn.1985). Defendants acknowledge that they were acting under color of state law.

Defendants argue, however, that assuming plaintiffs' version of the facts is true, defendants still have not deprived plaintiffs of a federally protected right. Defendants support this contention by relying on *Hanson v. Larkin*, 605 F.Supp. 1020, 1023 (D.Minn.1985). In *Hanson* an off duty police officer, although still in his uniform, allegedly battered and unjustifiably arrest-

ed the plaintiff. The plaintiff subsequently brought suit under section 1983 claiming a violation of procedural due process based on the battery and false arrest. Applying the *Parratt* adequate state remedies analysis, the *Hanson* court concluded that the plaintiff could not maintain a section 1983 action. The court reasoned that the plaintiff had adequate state remedies because he could bring state tort actions against the police officer. *Hanson*, 605 F.Supp. at 1024–26, *citing Paradise v. City of Minneapolis*, 297 N.W.2d 152 (Minn.1980) (police officers use of excessive force constitutes battery); *Lundeen v. Renteria*, 302 Minn. 142, 224 N.W.2d 132 (1974) (per curiam) (Minnesota recognizes false arrest actions against police officers).

■ Even assuming *Hanson* was correctly decided, defendants' reliance on that case does not entitle defendants to dismissal. The only federally protected right which the plaintiff claimed was violated in *Hanson* was the right to procedural due process. By contrast, the plaintiffs in the present action are alleging violations of substantive constitutional rights as well as violations of procedural due process. Plaintiffs are claiming that defendants violated their fourth amendment right to be arrested only upon probable cause. The existence of state law tort remedies has no bearing upon plaintiffs' fourth amendment claims because the *Parratt* analysis of available adequate state remedies applies only to violations of procedural due process and not to violations of substantive constitutional proscriptions. *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517, 523–24 (8th Cir.1985); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1497–1502 (11th Cir.1985) (en banc); *Lavicky v. Burnett*, 758 F.2d 468, 472 n. 1 (10th Cir.1985); (*Parratt* analysis does not apply to fourth amendment); *Spell v. McDaniel*, 591 F.Supp. 1090, 1106–07 (E.D.N.C.1984);

*Begg v. Moffitt*, 555 F.Supp. 1344, 1353–65 (N.D.Ill.1983).

■ Plaintiffs, moreover, can clearly maintain a section 1983 action for being arrested without probable cause. *E.g., Herrera v. Valentine*, 653 F.2d 1220, 1229 (8th Cir.1981); *Wheeler v. Cosden Oil and Chemical Co.*, 734 F.2d 254, 260 (5th Cir.), *mod. on other grounds*, 744 F.2d 1131 (1984); *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir.1978). Thus, even assuming that *Hanson* was correctly decided, plaintiffs in the present action can still maintain a section 1983 action.

The correctness of *Hanson*, moreover, is questionable. *See Quaschnick v. State of Minnesota*, 106 F.R.D. 587, 589–90 (D.Minn.1985) (Murphy, J.); *see also Spell*, 591 F.Supp. at 1103–07. Initially, *Hanson* seems inconsistent with the cases which allow plaintiffs to bring section 1983 claims for being arrested without probable cause. *E.g., Herrera*, 653 F.2d at 1229; *Wheeler*, 734 F.2d at 260. *Hanson* is also contrary to the strong authority that police officers' use of excessive force is conduct actionable under section 1983. *E.g., Herrera*, 653 F.2d at 1229; *Putman v. Gerloff*, 639 F.2d 415, 420–21 (8th Cir.1981).

A specific criticism of *Hanson*, is that it extends the *Parratt* analysis to intentional deprivations of liberty interests. The Supreme Court has expanded the application of *Parratt* to include intentional as well as negligent deprivations of property interests. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). The Supreme Court, however, has yet to address the issue of whether *Parratt* applies to liberty interests. The courts which have addressed this question are split. *Compare Thibodeaux v. Bordelon*, 740 F.2d 329, 337 (5th Cir.1984) (*Parratt* applies to liberty interests) *with Anton v. Lehpamer*, 584 F.Supp. 1382, 1386 (N.D.Ill. 1984) (*Parratt* does not apply to intentional deprivations of liberty interests).[4]

---

4. Recently, two courts of appeals have altered their positions on this issue. In *Wilson v. Beebe*, 743 F.2d 342 (6th Cir.1984), the Sixth Circuit held that *Parratt* does not apply to intentional or negligent deprivations of liberty interests, but

the court sitting en banc concluded that *Parratt* did apply in such situations. *Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir.1985) (en banc). Similarly, a panel in the Eleventh Circuit had concluded that a plaintiff could not maintain a

In *Parratt* itself, Justice Blackmun cautioned that the decision did not reach deprivations of life or liberty. *Parratt*, 451 U.S. at 545, 101 S.Ct. at 1917–18 (Blackmun, J., concurring). Courts which have refused to apply *Parratt* to liberty interests note that such interests are "of a wholly different nature" than property interests. *Spell*, 591 F.Supp. at 1104, *quoting Wakinekona v. Olim*, 664 F.2d 708, 715 (9th Cir.1981), *rev'd on other grounds*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). "Deprivations of liberty are more repugnant, less readily compensable (if at all), and generally carry more severe consequences for the victim than deprivations of property." *Spell*, 591 F.Supp. at 1105.

▮ Even if *Parratt* does apply to liberty as well as property interests, the *Hanson* ruling is still questionable because it conceptualizes the right to be free from police officer assaults as only a procedural right.

> [C]ertain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process.

*Parratt*, 451 U.S. at 545, 101 S.Ct. at 1917–18 (Blackmun, J., concurring). To conceptualize the right not to be beat up by a police officer as only a right to have recourse to certain procedures before or after the attack is disturbing. *See Anton* 584 F.Supp. at 1386, *citing Youngberg v. Romeo*, 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982). The right to be free from such attacks is more than procedural, it is a substantive right which exists irrespective of the availability of post-deprivation hearings. *See Gilmere v. City of Atlanta*, 774 F.2d 1495, 1499–1502 (11th Cir.1985) (en banc); *Spell*, 591 F.Supp. at 1105–06; *Spallone v. Village of Roselle*, 584 F.Supp. 1387, 1394 (N.D.Ill.

1984). *Cf. Moore v. City of East Cleveland*, 431 U.S. 494, 502–03, 97 S.Ct. 1932, 1937–38, 52 L.Ed.2d 531 (1977) (plurality) (liberty interest in family integrity protected by substantive as well as procedural due process); *In re: Scott County Master Docket*, 618 F.Supp. 1534, 1547–48 (D.Minn. 1985) (same). Once it is recognized that the right of an individual to be free from police assault is a substantive right, then the *Parratt* adequate state remedies analysis does not apply. *E.g., L & H Sanitation, Inc.*, 769 F.2d 517, 523–24 (8th Cir. 1985); *Gilmere*, 774 F.2d at 1499–1502.

The final indication that *Hanson* is questionable is evident in the result it achieves. *Hanson* is, clearly, a "well-crafted opinion." *Quaschnick*, 106 F.R.D. at 589. The opinion expands the reach of *Parratt* by using a certain syllogistic logic, but it does so in a vacuum. *See Anton*, 584 F.Supp. at 1385. The case seems to overlook the raison d'etre of section 1983:

> The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law....

*Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972).

In the case in which the Supreme Court reawakened section 1983, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court held that an action under section 1983 would lie in spite of the fact that the "State ha[d] a law which if enforced would give relief. The federal remedy is supplementary to the state remedy...." *Monroe*, 365 U.S. at 183, 81 S.Ct. at 482.

*Monroe* itself involved plaintiffs suing police officers for violations of constitutional rights. Suing law enforcement officials for such transgressions is one of the para-

---

section 1983 action against police officers for beating and shooting an arrestee because *Parratt* applied to intentional deprivations of liberty interests. *Gilmere v. City of Atlanta*, 737 F.2d 894, 909–10 (11th Cir.1984). The Eleventh Circuit en banc, however, reversed the decision of the panel. The court held that the rights in-

volved in the case were substantive, and *Parratt* only applied to procedural rights. *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1497–1502 (11th Cir.1985) (en banc). The court's analysis made it unnecessary to reach the issue of whether *Parratt* applied to liberty interests. *Gilmere*, 774 F.2d at 1499–1500 n. 4.

digm examples of a section 1983 action. Thus, the conclusion that plaintiffs cannot utilize this statute to sue police officers who violated federally protected rights because state tort law actions are available, is contrary to the very purpose of section 1983. Defendants' interpretation of section 1983 would make the statute meaningless for an important type of case within the core of the statute's protections. *See Spallone*, 584 F.Supp. at 1391.

### Res Judicata

Defendants argue that even if plaintiffs' complaint does state a claim upon which relief can be granted, plaintiffs' claims are nevertheless barred by collateral estoppel. Defendants reason that because the municipal court found in the preliminary hearing that probable cause supported the charges against plaintiffs, plaintiffs are estopped from claiming otherwise.[5]

■ As an initial matter, res judicata and collateral estoppel are affirmative defenses which defendants must plead. Fed. R.Civ.P. 8(c). While defendants argue collateral estoppel in their brief, they have not pled it as an affirmative defense in their answer. Accordingly, defendants cannot raise the defense of collateral estoppel. *Sartin v. Commissioner of Public Safety of Minnesota*, 535 F.2d 430, 433 (8th Cir. 1976). Of course, if the Court were so inclined, it could allow defendants to amend their answer. *See* Fed.R.Civ.P. 15(a). Thus, the Court will discuss the merits of defendants' collateral estoppel argument.

■ Defendants are correct that issues actually litigated in state court proceedings are entitled to preclusive effect in subsequent federal section 1983 actions. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 97–99, 101 S.Ct. 411, 416–17, 66 L.Ed.2d 308 (1980). The preclusive effect to which actually litigated issues

are entitled, however, is governed by the law of the forum state. *Migra*, 104 S.Ct. at 896, 897; *see also* 28 U.S.C. § 1738. Thus, Minnesota law of res judicata and collateral estoppel determines whether the preliminary hearing has issue preclusion effect.

Minnesota law declares that a party is collaterally estopped from relitigating an issue previously decided

> only where (1) the party sought to be estopped ... was fully represented in the original litigation, and (2) the resolution of the issue in question was a necessary component of the original decision.

*Transamerica Insurance Group v. Paul*, 267 N.W.2d 180, 182 (Minn.1978). The party against whom collateral estoppel is sought must also have had a full and fair opportunity to be heard on the issue. *E.g., Ellis v. Minneapolis Commission on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982).

■ Here, plaintiffs were represented by counsel at the preliminary hearing, and the municipal court did · have to resolve the probable cause issue in order to require plaintiffs to stand trial. Whether the hearing constitutes a full and fair opportunity to be heard, however, is the key issue. Defendants argue that a preliminary hearing is just like a trial. Parties may cross-examine witnesses at a preliminary hearing, Minn.R.Crim.P. 11.03, and defendants are also entitled to counsel. *See* Minn.R. Crim.P. 5.02. In contrast to a trial, though, the court's decisions at a preliminary hearing can be based on hearsay evidence. *State v. Rud*, 359 N.W.2d 573, 577 (Minn.1984); *see also* Minn.R.Crim.P. 11.03, 18.06, subd. 1. Defendants at preliminary hearings moreover, are restricted in their ability to require the testimony of witnesses. *Rud*, 359 N.W.2d at 577–79. These differences between a preliminary hearing and a trial indicate that the determinations

---

**5.** Defendants' motion as it relates to collateral estoppel is a motion for summary judgment because defendants submitted matters outside the pleadings, *i.e.*, transcript excerpts from the state court proceedings, and the Court did not exclude this material. *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.) (Stahl, J., plurality), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Ryan v. Scoggin*, 245 F.2d 54, 57 (10th Cir.1957).

of the former should not have issue preclusion effect.

Other Minnesota case law supports this conclusion. *See State v. Schmieg,* 344 N.W.2d 425, 427 (Minn.Ct.App.1984). *Schmieg* held that a court's preliminary hearing ruling on a suppression motion was not res judicata. In fact, under Minnesota law, a criminal conviction does not preclude the individual found guilty from relitigating the issue of his or her innocence. *Travelers Insurance Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289, 292 (1968); *Wahl v. Walton,* 30 Minn. 506, 16 N.W. 397, 398 (1883) (previous conviction not bar to false arrest action);[6] *Nevins v. Christopher Street, Inc.,* 363 N.W.2d 891, 893 (Minn.Ct.App.1985).[7] The existence of a prior criminal conviction cannot even be admitted into evidence in a subsequent civil trial. *Travelers Insurance Co.,* 163 N.W.2d at 292.

A preliminary hearing affords defendants fewer adversarial safeguards than a full trial. *See Rud,* 359 N.W.2d at 577. If the result of a trial, *i.e.,* a criminal conviction, does not have preclusive effect in subsequent civil litigation, then *a fortiori* the result of a preliminary hearing cannot have preclusive effect either. The Court concludes that plaintiffs' claims are not barred by collateral estoppel.[8]

**Section 1985**

■ In addition to their section 1983 claims, plaintiffs have another federal cause of action based on 42 U.S.C. § 1985. Section 1985(3)[9] prohibits conspiracies to deprive persons of the equal protections of the law. Racial or class-based animus is a required element of such an action. *Grif-*

*fin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Animus against an individual is not sufficient; animus must be class-based. *See, e.g., Kimble v. D.J. McDuffy Inc.,* 648 F.2d 340, 346–47 (5th Cir.) (en banc), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

In their brief, defendants did not argue that plaintiffs' complaint failed to state a claim under section 1985(3). Plaintiffs, however, addressed this issue in their brief in order to show that they have an alternative federal cause of action besides section 1983. Plaintiffs maintain that defendants realized that they had overreacted to the incident at the ice arena. According to plaintiffs, defendants nevertheless decided to arrest and charge plaintiffs in order to defeat a possible civil rights action against them.

■ Assuming plaintiffs' allegations are true, plaintiffs must still satisfy the class-based animus requirement of section 1985(3). Plaintiffs argue they have done so because they are members of a class of people who are criminally prosecuted solely because they have potential brutality claims against police officers. Plaintiffs cite two cases for the proposition that section 1985(3) protects classes of individuals other than racial groups, *Scott v. Moore,* 640 F.2d 708 (5th Cir.1981), *reh'g* 680 F.2d 979 (1982) (en banc), *rev'd,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Lapin v. Taylor,* 475 F.Supp. 446 (D.Hawaii 1979), but in any event a class of the type alleged here clearly is insufficient for a section 1985(3) action.

**6.** Both *Travelers Insurance Co.* and *Nevins* cite *Wahl* as authority, thus *Wahl* is still good law.

**7.** A previous conviction will have res judicata effect in one exceptional situation, namely where a convicted person tries to profit from his or her own crime through subsequent civil litigation. *Travelers Insurance Company,* 163 N.W.2d at 292 (T. Eugene Thompson); *Nevins,* 363 N.W.2d at 893. This exception cannot apply to the present action because plaintiffs were acquitted.

**8.** Even if the municipal court's probable cause determination had collateral estoppel effect, that determination would only prohibit plaintiffs from asserting their false arrest claims; it would not prevent plaintiffs from claiming defendants used excessive force in effectuating the arrests. *Spallone v. Village of Roselle,* 584 F.Supp. 1387, 1390 (N.D.Ill.1984).

**9.** Plaintiffs do not designate under which subsection of section 1985 they are proceeding, but subsection three is the appropriate one.

Based on the foregoing, IT IS ORDERED that defendants' motion for summary judgment on the basis of collateral estoppel is denied.

IT IS FURTHER ORDERED that plaintiffs' cause of action under 42 U.S.C. § 1985 (Second Cause of Action) is dismissed.

IT IS FURTHER ORDERED that defendants' motion to dismiss is denied in all other respects.