Delmar DENNIS, et al.,
Plaintiffs-Appellees,

v.

Glen WARREN, Individually and, Scott
County Sheriff, et al.,
Defendants-Appellants.

No. 85–4119.

United States Court of Appeals,
Fifth Circuit.

Dec. 30, 1985.

Edwin L. Pittman, Atty. Gen., Donald G. Barlow, John T. Kitchens, Asst. Attys. Gen., Jackson, Miss., for defendants-appellants.

Richard L. Stradley, Walnut Grove, Miss., for plaintiffs-appellees.

Before GARZA, POLITZ, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

This is an appeal from a judgment in favor of Delmar Dennis in his suit against Glen Warren, the sheriff of Scott County, Mississippi, and Otis Kelly, the deputy sheriff of Scott County.[1] The district court after a bench trial found that Kelly had violated 42 U.S.C. § 1983 as well as state laws in the false arrest and imprisonment of Dennis, and that Warren was liable under state law for the acts of his deputy Kelly. The district court awarded Dennis actual and punitive damages and attorney's fees. Because we find no error in these rulings, we affirm in all respects.

## I. FACTS [2]

Dennis, a resident of Tennessee, travelled with his wife, Nancy, to attend his daughter's high school graduation ceremony in Scott County. During the early evening of May 13, 1982, Dennis was driving south on Highway 35 about 13 miles north of his destination, the town of Forest, Mississippi. Dennis noticed deputy Kelly in a patrol car parked beside the highway.

When Dennis drove by, Kelly pulled out to follow him and switched on his blue flashing lights. Dennis brought his car to a stop on the side of the road.

Kelly asked Dennis to produce his driver's license and Dennis complied. Kelly then served Dennis with a summons to appear in Lauderdale County, Mississippi, at the chancery court on a child support matter. The summons commanded Dennis to appear on July 2, 1982. When Dennis asked why he had been stopped, Kelly replied that he was being placed under arrest on the basis of these papers. Dennis examined the papers and asked whether he could be arrested on the basis of a chancery court summons. Kelly then stated that he had no choice in the matter, arrested Dennis, and drove him to the Scott County Jail.

The events leading to the arrest were disputed at trial, but the district court found that the following events took place. Shortly before the arrest, Jerry Bustin, an attorney representing Dennis' former wife, had brought the chancery court summons to the Scott County Sheriff's office. Kelly testified that Bustin gave him the papers and said, "Go out and get Delmar Dennis, he is supposed to be coming to town, we have got a paper for him." Kelly testified it was generally understood that when someone brought legal papers to the Sheriff's office and said, "Go out and get him," that meant to bring that person to jail. Kelly did not fully read the papers to see if he had any authority to arrest Dennis until after Dennis had been jailed. Kelly admitted that he arrested Dennis because Bustin told him to, and that he would arrest anyone in Scott County based upon papers given him by an attorney.

En route to the Scott County Jail, Kelly used his car radio to say that he had arrested a person and was bringing him to jail.

---

1. The claims of Dennis' wife Nancy, also a plaintiff in the suit, were dismissed. Dennis' claims against Joe Lee, a radio dispatcher in the sheriff's office, and against Joyce Caldwell Dennis Smith, Dennis' former wife, were also dismissed. The identity of two defendants, called in the complaint John Doe and Jack Doe, was not established. Dennis does not challenge these dismissals.

2. The following narrative is drawn largely from the district court's findings of fact. The parties do not challenge these findings.

Dennis testified that he heard an unidentified party reply over the radio, "Remember what I told you to do in this case," and Kelly answered, "Yeah, I'm doing it, I've got it." Upon Kelly's arrival, he booked Dennis into jail. Dennis remained incarcerated in the Scott County Jail for approximately three-and-one-half hours and then was released.

According to his testimony, Kelly read the papers given him by Bustin sometime after Dennis was jailed. Kelly, who had over twenty years of experience in law enforcement, knew the difference between a "summons," which could not serve as the basis for a valid arrest, and a "writ," which could authorize an arrest. Although the word "summons" was written on the top of the papers, he did not release Dennis when he realized the illegality of the arrest. Kelly testified that he believed only a judge or the sheriff had authority to release an incarcerated person.

Nevertheless, Kelly released Dennis after receiving a phone call from Bustin ordering him to set Dennis free. Bustin's call came after an attorney acting on Nancy Dennis' request had called Kelly and then Bustin to gain Dennis' release. Sheriff Warren was not involved in any of the foregoing events.

On appeal, Kelly and Warren challenge the judgment in several regards. First, they claim that the illegal arrest and detention did not constitute a violation of section 1983. Second, they claim that they were entitled to qualified immunity, and that in any case Warren is liable not individually but only in his official capacity as sheriff. Third, they argue that the damages awarded by the district court were excessive. Finally, they contend that the district court erred in awarding Dennis his attorney's fees.

## II. DISCUSSION

### A. *Section 1983.*

Kelly and Warren contend that Kelly's actions did not constitute a violation of Dennis' federally secured rights under 42 U.S.C. § 1983.[3] They claim his actions were "no more than simple negligence," and "certainly not willful and malicious," and thus not a violation of Dennis' rights. We disagree.

A section 1983 plaintiff must show two essential elements. "First, the conduct complained of must have been committed by a person acting under color of state law; and second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984). It is undisputed that Kelly acted under the color of state law in arresting and jailing Dennis. The next question is whether Dennis' federal rights were violated.

We have no difficulty in finding that the arrest and detention violated Dennis' rights under the fourth and fourteenth amendments. Kelly arrested Dennis without the slightest hint of probable cause, or even a reasonable suspicion, that Dennis had committed a crime. Kelly had no arrest warrant. Kelly acted on the basis of a civil summons, which he knew could not authorize a lawful arrest. Kelly failed to release Dennis even after realizing his mistake. The evidence indicated that Kelly's actions in arresting, detaining, and finally releasing Dennis were a product of the wishes of an attorney. An individual's right to be free from such unlawful arrest and detention is a federally protected right, the violation of which may be grounds for a suit under section 1983. *See Duriso v. K-Mart No. 4195, Division of S.S. Kresge*

3. Section 1983 provides the following:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Co.,* 559 F.2d 1274, 1277 (5th Cir.1977); *Nesmith v. Alford,* 318 F.2d 110, 124–25 (5th Cir.1963), *cert. denied,* 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964).[4]

### B. *Liability of Kelly and Warren.*

The district court found Kelly personally liable for damages under section 1983. Kelly now argues that he acted in good faith and is entitled to the defense of qualified immunity. Kelly argues that his discretionary acts in arresting and detaining Dennis thus do not expose him to liability for damages.

■ Kelly's acts are not shielded from liability for civil damages, as they constitute violations of clearly established law. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We recognize that not every wrongful arrest is a violation of well-settled law. *See Saldana v. Garza,* 684 F.2d 1159, 1164–65 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). However, we conclude that a reasonable police officer could not have believed Kelly's acts were permissible. To arrest someone on the basis of a civil summons, following an attorney's directions to "Go out and get him," and to hold him until that attorney orders his release, is not within the imaginable scope of lawful police conduct.

■ The district court correctly recognized that Sheriff Warren was not liable under section 1983, since he was neither personally involved in the arrest or detention of Dennis, nor was there a causal connection between his acts and the violations of Dennis' federal rights. *See Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir. 1983). However, the district court held Warren liable for damages under a Mississippi statute which provides that "[a]ll sheriffs shall be liable for the acts of their deputies, and for money collected by them." Miss.Code Ann. § 19–25–19 (1972). Warren claims that Mississippi law provides at most only for an award against him in his official capacity, not in an individual capacity.

The statute on its face appears to provide for personal liability of the sheriff; no mention is made of liability running only in his official capacity. While this provision has not been interpreted with regard to a deputy's acts in making an unlawful arrest, the Mississippi Supreme Court has held that where a deputy has negligently driven an official automobile "the sheriff is liable to a person injured as a proximate result thereof." *Poole v. Brunt,* 338 So.2d 991, 994 (Miss.1976); *see also Barr v. Davis,* 369 So.2d 513, 514 (Miss.1979) (reversing demurrer, sheriff and deputy both liable for deputy's negligent driving on official business); *Bearry v. Stringfellow,* 246 Miss. 123, 149 So.2d 500 (1963) (affirming judgment against sheriff for deputy's fatal shooting of suspect). *Poole* favorably quotes this passage from Annot., 15 A.L. R.3d 1189, 1201: "Generally speaking, even though a sheriff is *personally liable* for an act of his deputy, it does not necessarily follow that his bondsman is also liable." 338 So.2d at 995 (emphasis added). It thus appears that Mississippi law provides for a sheriff's liability under section 19–25–19 to be personal in nature.

### C. *Damages.*

The district court awarded actual damages of $6,000 to Dennis for his pain, suffering, humiliation and embarrassment caused by the unlawful arrest and detention. The district court also awarded punitive damages of $10,000. These awards were based on violations of section 1983 and state law, and were assessed jointly and severally against Kelly and Warren.

---

**4.** Kelly and Warren claim that under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the unconstitutionality of Kelly's actions was alleviated by the availability of state tort remedies. We have previously interpreted *Parratt* to be inapplicable to substantive fourth amendment violations. *Augustine,* 740 F.2d at 325–27.

Kelly and Warren challenge the awards as excessive.

■ The district court "is afforded wide latitude in awarding damages, and its decision will not be set aside unless the award is clearly inappropriate." *Hart v. Walker*, 720 F.2d 1436, 1441 (5th Cir.1983) (citing *Drake v. E.I. DuPont De NeMours and Co.*, 432 F.2d 276, 279 (5th Cir.1970)). We do not find that $6000 is an inappropriate amount to compensate Dennis for the injuries to his reputation and emotional well-being that he sustained. Further, the evidence supported the district court's conclusion that Kelly acted with a willful, wanton, and reckless disregard for Dennis' rights; we find no error in the imposition or the amount of punitive damages. *See Hart*, 720 F.2d at 1442 (applying Mississippi law of punitive damages).

### D. *Attorney's Fees.*

The district court awarded Dennis attorney's fees under 42 U.S.C. § 1988 in the amount of $10,555.74. Kelly and Warren challenge this award largely because no contemporaneous time records were filed in support of the requested fee. Although the district court found the non-contemporaneous time records accurately reflected the amount of attorney time actually expended, Kelly and Warren argue that a local rule of this Court requires contemporaneous records.[5]

■ A district court's award of attorney's fees under section 1988 will not be disturbed absent an abuse of discretion. *Hart*, 720 F.2d at 1442. Although this Court has admonished counsel in previous cases that time records should be kept, we have not held that contemporaneous time sheets are indispensable. *See, e.g., Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1094 (5th Cir.1982). Without deciding the applicability of our local rule 47.8.1 to a district court proceeding, the rule provides that "[i]f the reasonableness of the hours claimed on the basis of time records becomes an issue, the applicant shall voluntarily make his time records available for inspection by opposing counsel and, if a dispute is not resolved between them, by the Court." The district court evidently followed such a procedure, and we find no abuse of discretion.[6]

The judgment of the district court is AFFIRMED.

---

5. The local rule in question provides:

   Supporting Requirements—Petitions or motions for the award of attorney's fees should always be supported by contemporaneous time records recording all work for which a fee is claimed and reflecting the hours or fractional hours of work done and the specific professional level of services performed by each lawyer for whom compensation is sought. In the absence of such records, no time expended will be considered in the setting of the fee beyond the minimum amount necessary in the court's judgment for any lawyer to produce the work seen in court. Exception may be made only to avoid an unconscionable result.

   The Clerk shall make reasonable efforts to advise counsel of the existence of this rule, but whether or not counsel has been advised, ignorance of this rule shall not, standing alone, be deemed grounds for an exception. If the reasonableness of the hours claimed on the basis of time records becomes an issue, the applicant shall voluntarily make his time records available for inspection by opposing counsel and, if a dispute is not resolved between them, by the Court. This rule shall not govern claims or portions of claims for attorneys' fees for work performed before January 1, 1983.
   5th Cir.R. 47.8.1.

6. Kelly and Warren challenge the amount and apportionment of the fee award in various other respects, but our inspection of the record reveals no abuse of discretion.