Hannah MAIDA and Santo
Maida, Plaintiffs,

v.

James ANDROS, et al., Defendants.

Civ. A. No. 86–2675.

United States District Court,
D. New Jersey.

Dec. 13, 1988.

Ronald G. Rubin, Voorhees, N.J., for
plaintiffs.

Thomas B. Reynolds, Absecon, N.J., for
defendants.

Marc L. Hurvitz, Atlantic City, N.J., for
Adamar of N.J.

Michael A. Pirolli, Bridgeton, N.J., for
Classic Coach.

## OPINION

GERRY, Chief Judge.

### I. *Introduction*

Plaintiffs Hannah and Santo Maida have filed a complaint in the District of New Jersey seeking redress under 42 U.S.C. §§ 1981, 1983, 1985(2) and (3), 1986, 1988 and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution as well as several state claims sounding in tort. The defendant, James Andros, was sued individually and in his capacity as an officer of the Atlantic City Police Department. The complaint alleges that the defendant used excessive force in arresting the plaintiffs, committed an assault and battery upon them, and used the criminal process to prevent them from asserting their rights. Now defendant moves to dismiss the complaint on the ground that plaintiffs have failed to pursue the adequate state remedies that exist to redress their wrongs, thus failing to state a claim for which relief can be granted.

The question before this court, then, is whether plaintiffs' claims are of such a nature that this court must hear them. We deal with each of plaintiff's claims in turn.

### II. *Section 1983*

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom or usage, ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 is purely remedial. In order to determine whether a violation of section 1983 has occurred, this court must determine, first, that the defendant acted under color of state law, and second, whether that action deprived plaintiffs of a constitutional right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Because the defendant in this case was a police officer acting in the course of his duties, we can answer the first inquiry in the affirmative. The answer to the second, however, takes us into deeper waters.

 Plaintiffs' complaint is no model of legal draftsmanship, as each alleged constitutional deprivation should be pled as a different count. Fed.R.Civ.P. 10(b). However, the heart of the complaint seems to be that defendant's use of excessive force in arresting them violated their liberty interests as protected by the due process clause of the Fourteenth Amendment. At this juncture we briefly examine the other amendments cited by plaintiffs before proceeding with analysis of plaintiffs' Fourteenth Amendment rights.

Plaintiffs' invocation of the Fourteenth Amendment seems to be for the purpose of arguing that defendant's actions constituted an unreasonable search and seizure. It is clear, however, that plaintiffs' complaint is not that defendant lacked a reason to arrest them, but that his method of doing so was excessively forceful, and intentionally so. Thus, plaintiffs' claim does not turn on whether they were the victims of an unlawful arrest, which they have a constitutional right to be free of under the Fourth Amendment, *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) and for which a section 1983 action may lie.

*Dennis v. Warren,* 779 F.2d 245 (5th Cir. 1985), *McKenzie v. Lamb,* 738 F.2d 1005 (9th Cir.1984). Cases involving the use of excessive force by state authorities are determined under the rubric of the protected liberty interests of the Fourteenth Amendment. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Black v. Stephens,* 662 F.2d 181 (3d Cir.1981) *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). Therefore, we shall not needlessly wander afield into Fourth Amendment jurisprudence.

We are frankly at a loss to see what First or Fifth Amendment rights are at stake in this case. Because plaintiffs have neglected to spell them out, we will not speculate. Plaintiffs' Eighth Amendment claims are also meritless, because it has long been established that the constitutional ban against cruel and unusual punishments applies only to those who have been convicted of criminal offenses. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *United States v. Lovett,* 328 U.S. 303, 317–18, 66 S.Ct. 1073, 1079–80, 90 L.Ed. 1252 (1946). Therefore, the only possible constitutional issue arising from defendant's conduct is one of due process under the Fourteenth Amendment.

Defendant's argument is based upon *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Parratt,* a prisoner bringing suit under section 1983 for the negligent loss of his property through the random and unauthorized acts of prison employees was found not to have alleged a violation of the Due Process Clause of the Fourteenth Amendment. *Id.* at 543, 101 S.Ct. at 1916–17. The Supreme Court found that because the state could not have provided a meaningful predeprivation hearing, the loss of property was beyond the control of the state. Since the state postdeprivation remedies (i.e., the penal tort claims procedure) were adequate, plaintiff was directed to pursue his remedies there. *Id.* at 543–44, 101 S.Ct. at 1916–17. The Court also expressed a fear of "turning every alleged injury which may have been

inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." *Id.* at 544, 101 S.Ct. at 1917. In short, section 1983 should not be used "to make of the Fourteenth Amendment a font of tort law to be superimposed upon ... the States." *Id. quoting Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

In *Hudson v. Palmer* the logic of *Parratt* was extended to require the use of state remedies to show the intentional deprivation of property by state employees: "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson* 468 U.S. at 533, 104 S.Ct. at 3204. This was because "[t]he state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." *Id.* Of course, where the state action was conducted under an established procedure, rather than a random and unauthorized act, a plaintiff need not exhaust the state's postdeprivation remedies in order to state a claim under the Due Process Clause and § 1983. *Id.* at 532, 104 S.Ct. at 3203; *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Berlanti v. Bodman,* 780 F.2d 296, 301 (3d Cir.1985).

Now defendant seeks a further extension of the logic of *Parratt* and *Hudson.* Defendant argues that if, under *Hudson,* a plaintiff must show exhaustion of state remedies in order to demonstrate the requisite state action for a deprivation of property under the Fourteenth Amendment, it follows that the same requirement should apply to a plaintiff alleging a deprivation of liberty. Therefore, no constitutional violation has occurred because plaintiffs in this case have not attempted to press their claims for assault and battery in New Jersey courts, where remedies for willful misconduct by a police officer can be had without fear of public employee immunity, under the provisions of the New Jersey Tort Claims Act. N.J.S.A. 59:3–14.

Defendant's argument finds its roots in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In that case, the Supreme Court found, among other things, that the system of corporal punishment as administered in Florida did not violate the Due Process Clause. This was so despite a lack of opportunity for a hearing before punishment. The Court found that although "corporal punishment in public schools implicates a constitutionally protected liberty interest, ... we hold that the traditional common-law remedies are fully adequate to afford due process." *Id.* at 672, 97 S.Ct. at 1413. The Court reached this conclusion by applying the balancing test used in procedural due process cases that was first articulated in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The relevance to the present case of *Ingraham's* heavy reliance on the availability of "traditional (state) judicial proceedings" in determining that a state sponsored beating, intentionally inflicted, did not violate the Due Process Clause, is obvious.

Other courts have followed the lead of *Ingraham* by considering the availability of state courts as a factor in determining whether a procedural due process liberty interest has been infringed by the intentional acts of state official. *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir.) *cert. denied, sub. nom. Ellis v. Judge of Putnam Circuit Court,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). In that case, the due process rights of the great aunt, adoptive grandmother, and "de facto" mother and father were not violated by state judicial officers' actions resulting in grandchildren being removed and adopted by strangers because "there is no denial of due process if the state provides reasonable remedies for preventing families from being arbitrarily broken up by local domestic relations officers...." *Id.* at 515.

In *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981) *aff'd on other grounds sub nom. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), the dismissal of a § 1983 complaint alleging, among other

things, that the football coach at a state university had committed assault and battery as well as harassment, embarrassment, and defamation upon a player, was affirmed on the grounds that it did not state a claim for the denial of due process. The court, using the teaching of *Parratt supra,* held that:

> ... we may assume, without deciding, that the alleged assault and battery deprived the appellant of "liberty" within the meaning of the Fourteenth Amendment and focus our attention on whether this was done "without due process of law." Obviously the assumed deprivation was not, nor could it have been accompanied by a predeprivation hearing. That being so, the issue is whether the postdeprivation hearing available to the appellant under the law of the State of Arizona satisfies the due process requirement of the Fourteenth Amendment.
>
> We hold that it does.

*Rutledge,* 660 F.2d at 1352 [citations omitted].

There have also been at least five district courts which have considered § 1983 suits with facts similar to this case (assault and battery by a police officer), and have rejected the plaintiff's claims for failing to show a violation of due process. *LaBate v. Butts,* 673 F.Supp. 887, 891 (E.D.Mich. 1987) ("In this case, the state remedies would be tort actions.... As the state remedies appear adequate, plaintiff has not stated a procedural due process claim."); *Porter v. City of Detroit,* 639 F.Supp. 589, 593 (E.D.Mich.1986) (same); *Dobson v. Green,* 596 F.Supp. 122, 125 (E.D.Pa.1984) (same); *Cerva v. Fulmer,* 596 F.Supp. 86, 94 (E.D.Pa.1984) (same); *Barnier v. Szentmiklosi,* 565 F.Supp. 869, 879 (E.D.Mich. 1983) (same), *rev'd in part on other grounds,* 810 F.2d 594 (6th Cir.1987).

However, we decline to follow these precedents in this case. First, it is acknowledged by all courts that there are "certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process." *Parratt,* 451 U.S. at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring). Such actions are restrained by the courts under the substantive aspects of the Due Process Clause. Substantive due process serves to prevent states from infringing those rights that are "implicit in the concept of ordered liberty" *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) and are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). While the Supreme Court has occasionally been specific in its enunciation of a substantive due process right, e.g. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the standard for a violation of a substantive due process right has generally been the vague one of conduct "that shocks the conscience" or "offends the community's sense of fair play and decency." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).

Still, certain parameters have been erected to give some shape to this nebulous concept. *Irvine v. California,* 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561 (1954) limited substantive due process to cases concerning state sponsored coercion or violence to the individual. In cases of alleged police brutality, Judge Friendly has set forth an often used formula for evaluating a substantive due process claim:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *See also, Black v. Stephens,* 662 F.2d 181, 188 (3d Cir. 1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct.

1646, 71 L.Ed.2d 876 (1982). Moreover, "substantive due process is violated at the moment the harm occurs (and therefore) the existence of a post-deprivation state remedy should not have any bearing on whether a cause of action exists under § 1983." *Rutherford v. City of Berkeley,* 780 F.2d 1444, 1447 (9th Cir.1986).

At this early stage in this case, we cannot say that, as a matter of law, the conduct of defendant was not violative of this standard. Therefore, to the extent that plaintiffs' claims rely upon a claim of substantive due process, we deny defendant's motion to dismiss. We also note that other cases which have dismissed or passed over substantive due process claims in a police brutality case were in a more advanced posture of factual development than the present matter. *e.g. LaBate,* 673 F.Supp. at 891 (summary judgment); *Cerva,* 596 F.Supp. at 91 (same); *Barnier,* 565 F.Supp. at 879–80 (directed verdict). And we agree with the court in *Buranen v. Hanna,* 623 F.Supp. 445 (D.Minn.1985) that "[t]o conceptualize the right not to be beat up by a police officer as only a right to have recourse to certain procedures before or after the attack is disturbing. The right to be free from such attacks is more than procedural, it is a substantive right which exists irrespective of the availability of postdeprivation hearings." *Id.* at 449 [citations omitted].

We therefore find that this case cannot be considered solely as one involving only procedural due process. Admittedly, some courts have treated civil rights complaints of police brutality as such. And of those that have, some have found that "there is no logical reason to distinguish 'property' and 'liberty' for purposes of determining whether the state has provided due process ..." *Barnier,* 565 F.Supp. at 877. *See also, Cerva,* 596 F.Supp. at 94; *Dobson,* 596 F.Supp. at 124–25. Several courts have taken the view that the taking of liberty does not inherently require greater process than the taking of property. *Thibodeaux v. Bordelon,* 740 F.2d 329 (5th Cir.1984); *Daniels v. Williams,* 720 F.2d 792 (4th Cir.1983) *aff'd on other grounds,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Wolf–Lillie v. Sonquist,* 699 F.2d

864 (7th Cir.1983); *Rutledge,* 660 F.2d at 1352.

Others have taken a different view. As the Ninth Circuit stated in *Haygood v. Younger,* 769 F.2d 1350, 1356 (9th Cir.1985) *(en banc)* cert. denied, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986):

While some judges have perceived in specific cases some rhetorical dichotomy between liberty and property, we believe that the inquiry more appropriately focuses on the gravity of the effect of government conduct on protected interests. All denials of life, liberty or property will fall somewhere on a continuum between relatively minor effects on non-constitutional interests at one end, and the loss of life at the other. On that continuum, we recognize that a denial of liberty will often have a more grave effect upon the victim than will a deprivation of property.

However, even at the risk of perpetuating a "rhetorical dichotomy," this court must agree with those precedents which have found that, even without undertaking a balancing test to determine what process is due for a deprivation of property, as directed by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), one can safely state that "[d]eprivations of liberty are more repugnant, less readily compensable (if at all), and generally carry more severe consequences for the victim than deprivations of property." *Spell v. McDaniel,* 591 F.Supp. 1090, 1105 (E.D.N.C.1984); *see also, Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Buranen,* 623 F.Supp. at 449.

There will be, of course, many cases in which a deprivation of property is more severe than a deprivation of a liberty interest. Even so, it seems that one reason for deferring to state courts and procedures in determining whether a violation of due process has occurred in the context of a deprivation of property is that the states generally make the substantive determination of what constitutes "property" in the first place. "Property interests are created and defined by state law." *Berlanti v. Bodman,* 780 F.2d 296 (3d Cir.1985); *See also,*

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972); *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985). But while a state can create or destroy property rights by granting or withholding entitlements, it plainly lacks the power to singlehandedly create or destroy a liberty interest. Indeed, given the historical circumstances that led to the ratification of the Fourteenth Amendment, any argument that the states are the ultimate authority on what constitutes a liberty interest would be astounding. J. Tenbroek, *The Antislavery Origins of the Fourteenth Amendment* (1951); H. Hyman, *A More Perfect Union: The Impact of the Civil War and Reconstruction on the Constitution* (1973). It may be appropriate to require plaintiffs to use state procedures in order to advance a viable claim for the negligent or intentional destruction of property under *Parratt* and *Hudson.* It may be that Section 1983 was not intended to remedy acts of negligence by the state that impinge liberty interests. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). But we decline to take the ultimate step of gutting *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) by requiring a plaintiff to exhaust state procedures in order to advance a section 1983 due process claim for the intentional tortious deprivation of a liberty interest, whether the deprivation be pled under the rubric of substantive or procedural due process.[1] As the Eleventh Circuit has stated in reference to section 1983:

> Whereas one may well need to look hard before finding a congressional intent to make a federal case out of a negligent deprivation of a prisoner's hobby kit, the debates do indicate that a primary motivation behind the passage of the statute was the desire to eliminate the physical violence that was being visited on citizens by those entrusted to keep the peace.

**1.** Or as the *Monroe* court stated: "It is no answer that the state has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need

*Gilmere v. City of Atlanta,* 774 F.2d 1495, 1498 (11th Cir.1985) (*en banc*) *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). Therefore, defendant's motion to dismiss plaintiff's Section 1983 claim will be denied. We remind plaintiffs that the burden remains on them to demonstrate that defendant used force excessive enough to constitute a violation of their substantive due process rights. *Edwards v. City of Philadelphia,* 860 F.2d 568, 573 (3d Cir.1988).

In addition, plaintiffs advance a purely procedural due process theory by asserting that defendant's conduct was not random or unauthorized "but condoned by his superiors." (Plaintiff's Brief p. 4) This theory would seem to be more appropriately used against defendant's superiors. *Hicks v. Feeney,* 770 F.2d 375 (3d Cir.1985); *Depew v. City of St. Mary's, Georgia,* 787 F.2d 1496 (11th Cir.1986). However, there is precedent for using it against a primary defendant. *Bacon v. Patera,* 772 F.2d 259, 264 (6th Cir.1985). For plaintiffs to prevail they must show more than mere condonation by defendant's superiors of isolated incidents of excessive force by police, but "establish a policy or custom [by showing] a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Depew,* 787 F.2d at 1499; *see also, Berlanti,* 780 F.2d at 301. Because plaintiffs have alleged as much in paragraph 20 of their complaint, we will not dismiss, but will put them to their proof.

## III. *Section 1981*

◼ Plaintiffs have raised a claim against defendant under 42 U.S.C. § 1981. However, section 1981 provides a remedy only for discrimination based upon race or alienage. *Carter v. Gallagher,* 452 F.2d 315 (8th Cir.1971) *cert. denied,* 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972). Plaintiffs have not alleged that their race or nationality played any role in the incident giving rise to this litigation. There-

not be first sought and refused before the federal one is invoked." 365 U.S. at 183, 81 S.Ct. at 482.

**530**

fore plaintiffs' section 1981 claim will be dismissed.

### IV. *Sections 1985, 1986*

 Plaintiffs have also advanced their claims under section 1985 and its companion section 1986, alleging defendant's participation in a conspiracy to deprive plaintiffs of their civil rights. However, section 1985 was not intended to apply to all tortious interferences with the rights of others, but only to those which are founded upon some class-based or racial invidiously discriminatory intent. *Briley v. California*, 564 F.2d 849 (9th Cir.1977). Because plaintiffs have not alleged any such animus, their section 1985 and section 1986 claims will be dismissed.

### V. *Pendent State Claims*

Because plaintiffs pendent state claims arise out of the same nucleus of operative facts as their section 1983 claim, this court will retain jurisdiction over them. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).