**Jerry Jaye HATLEY, Plaintiff,**

v.

**Jerry A. LEWIS, Johnny Blackmon, Wallace Gill and Jackson County Sheriff's Department, Defendants.**

Civ. A. No. S87–0795(R).

United States District Court, S.D. Mississippi, S.D.

Feb. 15, 1989.

---

Louis Guirola, Jr., Pascagoula, Miss., for plaintiff.

Thomas L. Stennis, Pascagoula, Miss., for defendants Johnny Blackmon, Wallace Gill and the Jackson County Sheriff's Dept.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on Motion for Summary Judgment filed by the defendants Jerry A. Lewis, Johnny Blackmon, Wallace Gill and the Jackson County Sheriff's Department, and the Court having considered said motion, together with briefs and exhibits, finds as follows, to-wit.

## I. FACTS

Defendant Lewis was allegedly physically assaulted on or about November 26, 1987, at the Palamino Club in Jackson County, Mississippi. The incident was thereafter reported to Defendant Lieutenant Johnny Blackmon of the Jackson County Sheriff's Department. Because he was not able to provide a name or sufficient description of the assailant, Lewis, Blackmon and other deputy sheriffs returned to the Palamino Club to locate the assailant. The plaintiff, the owner of the club, claims that on arrival he greeted the group, discussed Lewis' assault and told them they were free to look around the club for the assailant. The plaintiff asserts that at that time Lewis did not identify him or anyone else as the assailant.

When Lewis and Blackmon returned to the station, Blackmon allegedly explained to Lewis the procedure for procuring a John Doe affidavit and warrant against the unknown assailant. Lewis obtained two John Doe affidavits and warrants from Judge Raymond Beaugez and gave them to Blackmon. Blackmon asserts, and Lewis denies, that at some point after receiving the John Doe affidavits and warrants, Lewis claimed that the plaintiff was the assailant. In response to this, Blackmon claims that he inserted the plaintiff's name and the name of the club on the warrants and thereafter instructed another deputy sheriff to go and arrest the plaintiff on two counts of simple assault. The plaintiff was subsequently found not guilty and the charges were dismissed. Both Lewis and Blackmon were subpoenaed to testify at the trial but did not appear.

The plaintiff has filed suit alleging that his arrest was the result of a conspiracy between Lewis and Blackmon and that the process of Blackmon amending the John Doe warrants without going through proper constitutional procedures describes a pattern and practice acknowledged and assented to by the Jackson County Sheriff's Office by and through then Sheriff Wallace Gill. It is the plaintiff's position that the defendants' conduct caused the deprivation of his constitutional rights pursuant to the Fourth and Fourteenth Amendments to the Constitution and is actionable pursuant to 42 U.S.C. § 1983. The plaintiff further contends that the defendants' conduct gives rise to the state torts of false imprisonment, malicious prosecution, negligence and intentional infliction of emotional distress; and that as Sheriff at all times of the acts complained of, Wallace Gill is vicariously liable for the actions of his deputies pursuant to Miss.Code Ann. § 19-25-19 (1972). The defendants respond by arguing that as a matter of law the plaintiff is unable to meet the burden of proof required to sustain this action and therefore summary judgment is required.

## II. LAW

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In *St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir.1987), the Fifth Circuit addressed the law as regards summary judgment and stated that "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment. '[T]he requirement is that there be no *genuine* issue of *material* fact.' *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986) (emphasis in original)."

The Fifth Circuit has addressed when an issue is genuine.

[A]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986) (footnotes omitted).

The United States Supreme Court further stated in *Liberty Lobby* that as to materiality, "[o]nly disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

The Supreme Court has noted that the standard for summary judgment mirrors the standard for a directed verdict, the main difference between the two being when they are used, as the inquiry under each is the same. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Barebones

allegations are insufficient to withstand summary judgment because the opposing party 'must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard, et al. v. City of Greenwood, Miss., et al.*, 783 F.2d 1311, 1315 (5th Cir.1986) (citing *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.*, 695 F.2d 839, 845 (5th Cir.1983)).

### a. Defendant Blackmon

■ There is a dispute concerning whether Lewis ever identified to Blackmon the plaintiff as his assailant. However, there is no dispute that Blackmon, and not an impartial or neutral magistrate or judicial officer, altered the arrest warrants by writing the plaintiff's name and the name of his club immediately above the words John Doe.

In his deposition, Blackmon admitted that the correct procedure for the amendment of a John Doe warrant requires that "[y]ou take it back to the judge and have the judge reissue the warrant." Blackmon Depo. p. 36. Blackmon argues that although he may have made a mistake or was careless, nothing in the evidence amounts to a Section 1983 violation. Alternatively, Blackmon alleges that as a police officer acting under color of law, he is entitled to qualified immunity, which, he argues, precludes the imposition of liability as a matter of law.

Although officers are not held to foresee constitutional law, *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), their actions should constitute those that a reasonable police officer could believe were permissible. Obviously, their conduct must be within the "imaginable scope of lawful police conduct." *Dennis v. Warren*, 779 F.2d 245, 248 (5th Cir.1985. In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), it was held that:

[g]overnment officials performing discretionary functions ... are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights.

The *Harlow* analysis concerning an officer's reasonableness requires an objective, rather than subjective, determination. This reasonableness can be examined within the sphere of a two-part test set forth in *Trejo v. Perez*, 693 F.2d 482, 485 (5th Cir.1982):

(1) Was the law clearly established at the time? If the answer to this threshold question is no, the official is immune.

(2) If the answer is yes, the immunity defense ordinarily should fail unless the official claims extraordinary circumstances and can prove that he neither knew or should have known that his acts invaded settled legal rights.

The evidence indicates that Blackmon knew the procedure for amending John Doe warrants and that he declined to follow it. In light of *Harlow* and *Trejo*, it would appear that there is a factual dispute as to whether Blackmon is justified in asserting the position of qualified immunity.

As to Blackmon's claim of mere carelessness, oversight or mistake, this Court is given guidance by the two recent Supreme Court cases of *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). In *Daniels*, the petitioner sought damages under Section 1983 for back and ankle injuries allegedly sustained when he slipped on a pillow negligently left on a prison stairway by a sheriff's deputy. The complaint contended that such negligence deprived the petitioner of his liberty interest in freedom from bodily injury "without due process of law" within the meaning of the Due Process Clause of the Fourteenth Amendment.

The Court explained that historically, the guarantee of due process is applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property. Instances in which an injury occurs due to the negligence or lack of due care of an officer do not amount to the "arbitrary exercise of the powers of the government" which the Due Process Clause was to prevent. *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665. As later summarized in *Davidson:*

In *Daniels*, we held that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.

*Davidson*, 474 U.S. at 347, 106 S.Ct. at 670. Similar holdings were reached in *Love v. King*, 784 F.2d 708 (5th Cir.1986) (§ 1983 action alleging the police chief's negligence in not preventing a jealous husband from entering a house and shooting his wife who was having an affair inside); *Cannon v. Taylor*, 782 F.2d 947 (11th Cir.1986) (§ 1983 action alleging negligence of a police officer in the driving of his automobile which caused an accident); and *Young v. City of Killeen, Tex.*, 775 F.2d 1349 (5th Cir. 1985) (§ 1983 action alleging negligence of a police officer in creating a situation where the danger of a fatal mistake could exist).

In the present situation Blackmon acted affirmatively in effecting the arrest of the plaintiff in that he impermissibly added the plaintiff's name and the name of the plaintiff's club on the warrants and directed the plaintiff's arrest. By his own testimony, he knew that what he was doing was not proper procedure, but continued regardless. Unlike the "negligence" rationale of *Davidson* and *Daniels*, in the case *sub judice*, there is evidence of deliberate action rather than a mere lack of due care, mistake or carelessness which precludes a finding at this point that Blackmon's actions do not give rise to a Section 1983 claim.

Based on the disputed factual issues and prevailing case law on the subject, the Court is of the opinion that summary judgment as against defendant Officer Blackmon is not appropriate and should be denied.

b. Defendant Wallace Gill and Defendant Jackson County Sheriff's Department

■ Liability cannot be imposed on such a supervisory official such as a sheriff under vicarious liability or *respondeat superior. Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986); *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir.1983). For such an official to incur Section 1983 liability he " '[m]ust either be personally involved in the acts causing the deprivation of an individual's constitutional rights, or there must be a causal connection between the action of the official and the constitutional violation to be redressed.' " *Hinshaw,* 785 F.2d at 1263 (quoting *Harvey v. Andrist,* 754 F.2d 569, 572 (5th Cir.1985) (citations omitted)). However, such supervisory officials may be liable "[w]hen their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation." *Bowen v. Watkins,* 669 F.2d 979, 988 (5th Cir.1982). Usually, such a failure to supervise gives rise to Section 1983 liability only in those situations where knowledge is imputed to the supervisory official, and his subsequent failure to prevent the action or when there has been a history of widespread abuse. In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court held that an official is personally liable for actions taken while discharging his official responsibilities only if:

> [1] [H]e knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [individual] affected, or [2] if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [individual]. That is not to say that [officials] are 'charged with predicting the future course of constitutional law.'

*Id.* at 322, 95 S.Ct. at 1001.

Moreover, suit against Wallace Gill, in his official capacity as Sheriff, and against the Jackson County Sheriff's Department, is in reality an action against the municipality or the entity represented, *Brandon v.*

*Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed. 2d 878 (1985), and therefore to evaluate the "official capacity" claim against these defendants, the Section 1983 analysis concerning political entities and municipalities should be examined.

Under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that:

> local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance regulation, or decision officially adopted and promulgated by that body's officers.

*Id.* at 690, 98 S.Ct. at 2035.

The Supreme Court went on to state that:

> Although a touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.

*Id.* at 690–91, 98 S.Ct. at 2035–36.

The Fifth Circuit has interpreted *Monell* to say that the "policy" that the municipality violates need not be an officially adopted policy, but can also be a regular practice of the city officials which constitutes a custom that fairly represents official policy. *Bennett v. City of Slidell,* 735 F.2d 861 (5th Cir.1984).

In *Bennett,* the Fifth Circuit defined an "official" policy and custom as:

> 1. A policy statement, ordinance, regulation .or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority;

or

> 2. A persistent, widespread practice of city officials or employees, which, al-

though not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell,* 735 F.2d at 862. The *Bennett* Court previously explained that:

In the context of the question of city liability for such persistent conduct of its employees, i.e., conduct that has become a traditional way of carrying out policy and has acquired the force of law, the persistent conduct must be attributable to the source of policy or law of the city, its governing body.

.... Sufficient duration or frequency of abusive practices, or other evidence, must warrant a finding of knowledge on the part of the governing body that the objectional conduct has become customary practice of city employees.

*Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir.1984).

However, expounding on its decision in *Monell,* the Court in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), stated that:

If the decision to adopt that particular course of action is properly made by that government's authorized decision makers, it surely represents an act of official government 'policy' as that term is commonly understood.... *[Yet], [t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.*

*Id.* at 481, 106 S.Ct. at 1299.

In his deposition Blackmon admitted that while working for the Sheriff's Department under former Sheriff Gill that he, as in the present case, frequently amended John Doe warrants. Blackmon also admitted that he had spoken with other officers who have likewise amended such warrants. When asked if it was normal procedure to amend the warrants, as in the case *sub judice,* he responded, "I don't know if it was normal procedure, I know it was.... that we done it." Blackmon Depo. p. 20. He was asked if it happened "a lot" and he agreed that it did. Blackmon's testimony sufficiently gives rise to disputed factual issues concerning the knowledge and extent to which governmental officials, including Wallace Gill, either expressly or impliedly permitted the policy and practice of amending John Doe warrants by persons other than magistrates or other judicial officers; and therefore summary judgment as to the Sheriff's Department and Wallace Gill is not appropriate. Furthermore, under Mississippi law it is the case that "[a]ll sheriffs shall be liable for the actions of their deputies and for monies collected by them." Miss. Code Ann. § 19–25–19 (1972). This statute has been interpreted to mean that under state law sheriffs can be held vicariously liable for the actions of their deputies, even where the sheriff might not be liable for an illegal arrest or detention under Section 1983. *Dennis v. Warren,* 779 F.2d 245 (5th Cir.1985). Moreover, a sheriffs liability under this statute has been determined to be personal in nature. *Id.* at 248.

## III. CONCLUSION

For the reasons more fully set forth herein the Court is of the opinion that the plaintiff has satisfied his burden with respect to the present Motion for Summary Judgment filed by the defendants Lewis, Blackmon, Gill and the Jackson County Sheriff's Department concerning to the alleged constitutional and state tort violations and therefore the motion should be denied.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment filed by defendants Lewis, Blackmon, Gill and the Jackson County Sheriff's Department should be and is hereby DENIED.

SO ORDERED.